SEAN K. KENNEDY (No. 145632)
Federal Public Defender
(E-mail: Sean_Kennedy@fd.org)
John Littrell (No. 221601)
Deputy Federal Public Defender
(E-mail: John_Littrell@fd.org)
321 East Second Street
Los Angeles, California 90012
Telephone (213) 894-5310
Facsimile (213) 894-0081

Attorneys for Defendant
SERGIO SANTIAGO SYJUCO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 12-37-RGK |
| Plaintiff, | NOTICE OF MOTION; MOTION TO DISMISS INDICTMENT DUE TO DESTRUCTION OF EVIDENCE |
| v. | |
| SERGIO SANTIAGO SYJUCO, | DATE: November 12, 2012 |
| Defendant. | TIME: 1:30 p.m. |
| | JUDGE: Hon. R. Gary Klausner |
| | ROOM: 850 |

TO: UNITED STATES ATTORNEY ANDRE BIROTT'É, AND ASSISTANT UNITED STATES ATTORNEY MARGARET VIERBUCHEN:

PLEASE TAKE NOTICE that on November 12, 2012 at 1:30 p.m., in the courtroom of the Honorable R. Gary Klausner, United States District Judge, defendant Sergio Santiago Syjuco will bring on for hearing the following motion:

//
//

# **MOTION**

Defendant Sergio Santiago Syjuco, by and through his attorney of record, Deputy Federal Public Defender John Littrell, hereby moves for an order dismissing the indictment on the ground that the government destroyed or failed to preserve potentially exculpatory evidence, specifically, all of the outgoing text messages sent by the undercover FBI agent to the defendants during this 18-month investigation. Co-defendants Cesar Ubaldo and Arjyl Revereza, through their counsel, join in the motion.

This motion is made pursuant to pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution, as well as California v. Trombetta, 467 U.S. 479 (1984), and Arizona v. Youngblood, 488 U.S. 51 (1988). This motion is based upon the accompanying Memorandum of Points and Authorities and its exhibits, all files and records in this case, and any such arguments and evidence that may be adduced to the Court at the hearing on this motion.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: October 15, 2012     By  */s/ John LIttrell*
                                JOHN LITTRELL
                                Deputy Federal Public Defender

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

Sergio Santiago Syjuco, Cesar Ubaldo, and Arjyl Revereza are charged with Conspiracy, 18 U.S.C. §371, Importation of Defense Articles Without a License, 22 U.S.C. §2778, Importation of Firearms 18 U.S.C. § 922(l), 924(a)(1)(C), and Criminal Forfeiture. Trial is scheduled to commence on November 13, 2012.

The government contends that "for a period of roughly eighteen months, the defendants engaged in a conspiracy to traffic[k] and import into the United States restricted, military-grade weapons." Dkt. No. 88 (Opposition to Motion to Dismiss for Manufactured Jurisdiction) at 2. The government believes that the evidence will show that the defendants were "eager to traffic[k] in weapons and that they were capable of delivering high quality weapons, explosives, and body armor." Id.

The defense maintains that the defendants were not predisposed to commit the crimes charged against them, and that they acted as a direct result of aggressive and improper conduct by the agent, including, but not limited to, (1) taking the defendants to strip clubs and paying for prostitutes, see Dkt. No. 70 (Motion to Dismiss for Outrageous Government Misconduct) at 10-13, (2) threatening Syjuco when he failed to deliver the weapons that he had promised to the undercover agent, id. at 20-21, and (3) bullying the defendants. Id. Subsequent investigation has revealed that the undercover agent humiliated Syjuco in particular by mocking him for being "gay" because he did not show enough enthusiasm for girls in the strip clubs that the agent took him to. See Exhibit B (enhanced audio recording of undercover agent's January 4, 2012 discussion with Sergio Syjuco, Cesar Ubaldo, and Arjyl Revereza).[1] These

---

[1] A copy of the enhanced audio recording is submitted separately, under seal, pursuant to the protective order in this case. See Dkt. No. 40. The recording reflects conversations between the undercover agent and all three defendants on January 4, 2012, the evening when the undercover agent took the defendants to the Spearmint Rhino and Deja Vu, two strip clubs in the United States. One of the passages in which the undercover agent mocks and humiliates Syjuco based on his perceived sexual orientation appears approximately two hours and forty-five minutes (2:45) into the

tactics were particularly effective in inducing all three of the defendants, given the fact that the agent was approximately ten to fifteen years older than the defendants.

Because the defense of entrapment will be presented to the jury, the precise contents of the statements of both the defendants and the undercover agent and the context in which those statements were made, will be critical at trial.

The undercover agent communicated with the defendants extensively *via* email and text messages. The government has produced 419 pages of photographs of *incoming* text messages sent from the defendants to the undercover agent. See BATES 2097-2516. These text messages were produced in the form of photographs taken of the screen of a cellular phone with the messages displayed. Id. Presumably the government may introduce them at trial as admissions under Fed. R. Evid. 801(d).

The government has not produced any of the agent's *outgoing* text messages. These messages contain the substance of the undercover agent's statements *to* the defendants during this investigation, and helps explain the conduct of the defendants. The agent's statements are admissible as non-hearsay because the defense wishes to introduce them for a non-hearsay purpose: to establish their effect on the listener. See United States v. Payne, 944 F.2d 1458 (9th Cir. 1991). The text messages sent to the defendants will likely reflect the agent's humiliating and manipulative statements. It will also put in context the text messages that he received from the defendants.

On September 11, 2012, co-counsel George Buehler inquired of Assistant United States Attorney Margaret Vierbuchen why she had produced only photographs of incoming text messages from the undercover agent's phone, and not the outgoing text messages. See Exhibit A (September 13, 2012 email from George Buehler to AUSA Margaret Vierbuchen). Ms. Vierbuchen responded by stating that the cellular telephone used by the agent preserved only incoming messages and not outgoing

---

longer, three-hour recording, when the undercover agent offers to take Syjuco to clubs in Hollywood, because there are "lots of gays there." Id. The same type of humiliation occurs is approximately six minutes into the second, shorter recording. At that point, the undercover agent states that while he takes "Arvi" and "Arjyl" to strip clubs to "have a good time," "Yogi" (Syjuco) will be "waiting in the car." Id.

4

messages. Id. Defense counsel has discussed the government's claim with an expert, and the expert has indicated that this is unlikely. Id.[2] The government has offered no other explanation as to why none of the outgoing text messages sent by the undercover agent during his 18 month investigation have been preserved.

## II.

## ARGUMENT

Under Brady v. Maryland, 373 U.S. 83 (1963), the government violates the Due Process Clause of the Fifth Amendment where it fails to disclose favorable evidence in its possession that is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution. United States v. Nagra, 147 F.3d 875, 881 (9th Cir. 1998) (citing United States v. Hanna, 55 F.3d 1456, 1459 (9th Cir. 1995)). Under California v. Trombetta, 467 U.S. 479 (1984), and Arizona v. Youngblood, 488 U.S. 51 (1988), the government violates the Due Process Clause of the Fifth Amendment where it destroys or loses evidence and the defendant demonstrates that (1) the evidence had an apparent exculpatory value, (2) he or she cannot obtain comparable evidence by other reasonably available means, and (3) the government acted in bad faith. Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001)(setting forth test); Grisby v. Blodgett, 130 F.3d 365, 371 (9th Cir. 1997) (same); United States v. Hernandez, 109 F.3d 1450,1455 (9th Cir. 1997) (same).

"The presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed." United States v. Cooper, 983 F.2d 928,931 (9th Cir. 1993); see also United States v. Loud Hawk, 628 F.2d 1139, 1152 (9th Cir. 1980) (pre-Youngblood/Trombetta case setting forth six factors for evaluating government conduct when evidence is lost or destroyed). Where a court finds a due process violation based upon destroyed or lost

---

[2] The defense has retained a computer expert, and the government has agreed to allow the expert to examine the undercover agent's phone in order to determine whether it was, as the government claims, incapable of preserving outgoing texts.

evidence, the proper remedy is dismissal of the indictment. See Cooper, 983 F.2d at 933 (upholding district court's dismissal of indictment where government acted in bad faith in destroying laboratory equipment seized from defendants).

Under the three-part test set forth in Trombetta and Youngblood, the defense can show that the government destroyed potentially exculpatory evidence, that it did so in bad faith, and that comparable evidence cannot be obtained by other means.

### A.   The Exculpatory Value of the Evidence

The exculpatory value of the evidence destroyed by the government is clear. As the government concedes, its own undercover agent initiated the crimes charged in the indictment. See Dkt. No. 90 (Opposition to Motion to Dismiss for Outrageous Government Misconduct) at 2-16.  At issue at trial will be whether the defendants were entrapped by the agent to participate in the transaction, and that requires the jury to consider whether the agent, by his conduct in this case, "induced" them to commit the crime.  See Ninth Circuit Model Jury Instruction No. 6.2 (Entrapment).

In this case, there is strong circumstantial evidence that the undercover agent induced the defendants.  The agent admittedly took the defendants to strip clubs in Manila at least six times during the investigation, and each time he spent thousands of dollars to buy them alcohol and prostitutes in order to encourage them to complete a weapons deal.  See Dkt. No. 70 at 10-13.  Moreover, the agent threatened the defendants, and particularly Syjuco, when he failed to deliver the weapons that he had promised.  Id. at 20-21.  Investigation reveals additional proof that the agents mocked and humiliated Syjuco in particular, stating in front of his friends that he was "gay" when Syjuco failed to show his enthusiasm for the strip clubs.  See Exhibit B (under seal).  The agent's aggressive and humiliating statements to Syjuco and his co-defendants are precisely the evidence that would support an entrapment defense. Given the substance of the undercover agent's statements in other fora (including his oral statements on January 4, 2012), it is likely that additional manipulative

statements from the agent to the defendants appear in his outgoing text messages.

### B. The Government's Bad Faith in Destroying the Evidence

The government's bad faith in destroying the evidence should be inferred based on the lack of any persuasive explanation as to why all incoming text messages were preserved by the government, and none of the outgoing messages.

The government contends that the cellular phone used by the undercover agent is incapable of preserving outgoing text messages (but capable of preserving incoming ones). As set forth herein, this seems unlikely. But even if it were true, the government would be compelled to take reasonable steps to preserve the evidence in another way. For example, once the government realized this defect, it could have replaced the agent's phone with one that does record outgoing text messages in order to preserve what was obviously important evidence. Moreover, because the government preserved the incoming text messages by taking photographs of them as they appeared on the screen of the agent's phone, why would the government fail to similarly take photographs of the outgoing text messages as they appeared?

### C. Comparable Evidence Is Unavailable

Given the volume of texts involved (419 pages of incoming text messages alone), the volume of outgoing texts that the government failed to preserve is likely to be significant. Literally hundreds of statements by the undercover agent, all of which would be admissible at trial, and many of which would help establish a pattern of manipulation and bullying behavior by the agent, have been lost or destroyed. Even if he wanted to, the agent most likely could not remember the substance of all of the text messages that he sent to the defendants. Cross-examination of the agent is therefore not a reasonable alternative to actually accessing his text messages.

## III.
## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the indictment.

                                              Respectfully submitted,

                                              SEAN K. KENNEDY
                                              Federal Public Defender

DATED:    October 15, 2012        By */s/ John Littrell*
                                              JOHN LITTRELL
                                              Deputy Federal Public Defender